IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**SHARON CATLEDGE**                                                                 **PLAINTIFF**

**VERSUS**                                                            **NO.**  2:22-cv-66-TBM-RPM

**UNIVERSITY OF SOUTHERN MISSISSIPPI**                            **DEFENDANT**

**JURY TRIAL DEMANDED**

## COMPLAINT

This is an action to recover actual damages and injunctive and declaratory relief for race discrimination. The following facts support the action:

1.

Plaintiff SHARON CATLEDGE is an adult black resident citizen residing at 15 Stonemore Road, Petal, Mississippi 39465.

2.

Defendant UNIVERSITY OF SOUTHERN MISSISSIPPI is a political subdivision of the State of Mississippi. Defendant may be served with process by service upon the Chancellor of the University of Southern Mississippi, President Rodney D. Bennett, Office of the President, Lucas Administration Building, 118 College Drive #5001, Hattiesburg, Mississippi 39406.

3.

This Court has federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343. This case is brought for a violation of the Civil Rights Act of

1964, as amended by the Civil Rights Act of 1991.  This action is authorized by 42 U.S.C. § 1983.

4.

Plaintiff was hired in 2011 as a nurse practitioner at Defendant's health clinic.  Plaintiff was the only black medical provider in the clinic at that time, and remained the only black medical provider throughout her employment.  Plaintiff was good employee and received good evaluations.  Many patients specifically requested that she treat them.  Further, during Plaintiff's tenure with Defendant, Plaintiff served as a campus advisor for three different organizations and held many workshops throughout the campus after normal work hours.  Indeed, Plaintiff was considered an excellent nurse practitioner, as evidenced by the fact, among other things, that Plaintiff served as a member of the Mississippi Board of Nursing for eight (8) years, and three (3) of those years she was elected president of that Board by her peers.  Plaintiff was well known in the medical community for her diligence and for her professionalism as a Nurse Practitioner.

5.

During the time Plaintiff was employed by Defendant as a Nurse Practitioner, Plaintiff did receive some complaints from students, but considering she saw thousands of patients each year, the complaints was only a small fraction of those she treated.  Receipt of such complaints is typical for medical professionals at the University of Southern Mississippi, including not only nurse practitioners, but also physician assistants, medical doctors, nurses and all clinic personnel.  Medical personnel would receive complaints because they would refuse to prescribe drugs wanted by students, or because some parents, with no medical training, thought some other type of treatment was more appropriate.  It was well known among the medical staff that such complaints were made, and they were generally disregarded.  To Plaintiff's knowledge, no medical practitioner, whether

registered nurse, nurse practitioner, or physician, was ever given a writeup or disciplinary action because a student had made a complaint about him or her.

6.

Around 2016, Plaintiff's previous supervisor left and was replaced by Dr. Berthold Beisel. Dr. Beisel appeared to have animosity against Plaintiff because of her race. In fact, Plaintiff made a request to the medical director, Melissa Roberts, that she not be alone whenever she met with him.

7.

In 2019, Plaintiff made a complaint against Dr. Beisel, claiming, *inter alia*, that he was discriminating against her because of her race. After the complaint, Dr. Beisel began a pattern of correcting and writing up Plaintiff whenever a student would make a complaint, even though he knew that other physicians and medical personnel received similar complaints from students. Beisel must have known, because of the subjective and nonspecific nature of the student complaints, that they were groundless. Nevertheless, when Plaintiff received complaints, Beisel caused Plaintiff to be written up, caused her to be submitted to a counseling program, and made baseless claims that he thought Plaintiff's behavior with students was inappropriate. Beisel made these complaints, even though other medical providers were notoriously receiving student complaints. For example, one white physician and a white nurse practitioner were cited in an article in the student newspaper complaining about the care at the clinic. Plaintiff was not named in that article. Instead of disciplining these white medical providers, the medical director demanded that the student newspaper retract the article and issue an apology to the clinic.

8.

Defendant allowed student patients to submit "satisfaction cards" in which students could

comment upon the type of care which they received. Plaintiff believes that these cards will demonstrate that patient satisfaction with Plaintiff was as good, if not better, than the white medical providers.

9.

Additionally, Defendant maintained a computer system called Maxient, in which complaints about any employee of Defendant could be registered. Plaintiff believes her complaints were no different from those of the white medical providers.

10.

On or about June 9, 2021, Defendant, acting through Dr. Beisel, first asked Plaintiff to resign. When Plaintiff refused to resign, Dr. Beisel terminated Plaintiff's employment on the grounds that complaints from parents and students demonstrated unprofessional behavior. This termination occurred despite the fact that Plaintiff knew that other medical professionals, who were all white, would have had similar complaints and that there was no legitimate reason for Plaintiff's termination.

11.

Because Plaintiff was discharged on grounds of a lack of professionalism or on grounds that Plaintiff's behavior with students had not been appropriate, Plaintiff has been unable to obtain other employment as a Nurse Practitioner and had to accept employment in a much lower position, a registered nurse.

12.

Plaintiff was replaced by young white female.

13.

The reasons given for Plaintiff's termination were pretextual because Defendant knew that other white medical providers received the same type of student complaints, and because Defendant knew that prior to Plaintiff complaining about race discrimination, Plaintiff did not receive any writeups or discipline for these occasional student complaints.

14.

Because of the loss of her employment, Plaintiff has suffered mental anxiety and stress, and lost income.

15.

Plaintiff has filed an EEOC charge, attached hereto as Exhibit "A," and received the right to sue letter, attached hereto as Exhibit "B."

## REQUEST FOR RELIEF

Plaintiff requests actual damages against in an amount to be determined by a jury, and reinstatement. Plaintiff also requests reasonable attorneys' fees, costs and expenses.

RESPECTFULLY SUBMITTED, this the 16th day of May, 2022.

SHARON CATLEDGE, Plaintiff

By: */s/ Jim Waide*
Jim Waide, MS Bar No. 6857
waide@waidelaw.com
WAIDE & ASSOCIATES, P.A.
332 North Spring Street
Tupelo, MS  38804-3955
Post Office Box 1357
Tupelo, MS  38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

ATTORNEY FOR PLAINTIFF

STATE OF MISSISSIPPI
COUNTY OF Forrest

PERSONALLY came and appeared before me, the undersigned authority in and for the aforesaid jurisdiction, the within named SHARON CATLEDGE, who, after being first duly sworn, states under oath that the facts contained in the above and foregoing COMPLAINT are true and correct as stated therein.

_Sharon Catledge_
SHARON CATLEDGE

GIVEN under my hand and official seal of office on this the 13th day of May, 2022.

_Gwen Wills by Kayla Lattore_
NOTARY PUBLIC

My Commission Expires: 1/6/24